

**Dated: June 18, 2018**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Michael Angelo Soriano, | ) | Case No. 15-14341-JDL |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| Michael Angelo Soriano, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV 17-01018-JDL |
| | ) | |
| Wells Fargo Bank, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING PARTIAL MOTION
FOR SUMMARY JUDGMENT**

Arising out of litigation history extending back nearly a decade, in this multi-pronged

adversary brought by the Debtor against his residence mortgagee, he seeks the judgment

of this Court (1) disallowing the mortgagee's proof of claim on the basis that the mortgagee

does not have standing to assert the same, (2) disallowing the mortgagee's proof of claim

by virtue of the mortgagee's proof of claim having been denied in one of Debtor's previous

bankruptcies, (3) the state court foreclosure judgment is unenforceable and the mortgagee has no interest in the Debtor's property, the mortgage or the state mortgage foreclosure judgment, and (4) recovering actual and punitive damages for the mortgagee's alleged violation of the automatic stay.  Mortgagee has moved for summary judgment on the basis that (1) its failure to respond to the Debtor's objection to its claim in the prior bankruptcy only barred its right to be paid in accordance with the Chapter 13 plan but had no effect upon its *in rem* claim on the mortgage, (2) it is the holder of the Note and Mortgage and is entitled to enforce the same, (3) the state court foreclosure judgment in mortgagee's favor precludes the bankruptcy court from reconsidering mortgagee's standing to enforce the judgment under the *Rooker-Feldman* Doctrine, (4) if there was a technical violation of the stay in attempting to collect amounts awarded by the plan, the mortgagee reversed such charges before any funds were actually collected, and (5) even if the stay was violated, the Debtor is barred by the doctrine of laches from asserting the same.

Before the Court for consideration are (1) *Defendant Wells Fargo Bank, NA's,* *(*"Wells Fargo") *Motion for Summary Judgment* (the "Motion") [Doc.19], (2) *Plaintiff's Objection to Defendant's Motion for Summary Judgment* (the "Objection") [Doc. 21] and (3) *Defendant Wells Fargo Bank, NA's, Reply to Debtor's Response to Wells Fargo's Motion for Summary Judgment* (the "Reply") [Doc. 24].  The below constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052 and 9014.

### I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and

157(a)[1] and the Order of Reference issued by the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a). Plaintiff consented to the jurisdiction of this Court and to this Court's ability to enter a final order herein in its *Amended Complaint* pursuant to Fed.R.Bankr.P. 7008. [Doc. 4]. Defendant has consented to the jurisdiction of this Court and its ability to enter a final order by virtue of its filing of the *Jury Trial and Jurisdictional Acknowledgment and Consents* form. [Doc.14]. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding arising under 28 U.S.C. § 157(a)(2)(A), (B) and (O).

## II. Material Facts As to Which There Is No Dispute

1. On November 29, 2006, Plaintiff/Debtor Michael A. Soriano ("Soriano") executed a Promissory Note in favor of Wells Fargo in the principal amount of $400,000 with an annual interest rate of 6.125%. [Doc.19-1].[2]

2. As part of the execution of the Promissory Note and to secure payment of the Note, Soriano executed and delivered to Wells Fargo a real estate Mortgage in writing covering the real property at issue. [Doc.19-2]. The Mortgage was acknowledged and recorded in the office of the County Clerk of Cleveland County, Oklahoma, on December 6, 2006, and recorded in Book 4272 at pp. 879-899. [Doc.19-2].

3. On November 12, 2007, Soriano was notified by Wells Fargo that the loan was in default and two monthly payments were past due. [Doc.19-3]. On January 14, 2008,

---

[1]Unless otherwise specifically noted, all subsequent references to statutes herein are to the United States Code, 11 U.S.C. § 101 *et seq.*

[2] Unless noted otherwise, the term "Doc." refers to the document reflected on the docket sheet of this adversary proceeding. In some instances, where the document is from the underlying bankruptcy case, or from a previous bankruptcy case the same is so noted.

Soriano was notified that the loan, with a balance due of $407,862.46, had been accelerated and placed with a law firm for collection. [Doc.19-4].

4.   On February 1, 2008, Wells Fargo filed an action in the District Court of Cleveland County, Oklahoma, seeking an *in personam* judgment against Soriano and a judgment foreclosing Soriano's (and other's) interest in the subject property.[3]  The state court Petition alleged that Wells Fargo was the "holder of the Promissory Note and the Mortgage entitled to enforce the same."  The Promissory Note and Mortgage attached as exhibits to the Petition which named Wells Fargo as the payee/mortgagee did not show any endorsements or assignments of the instruments.  On July 9, 2008, the District Court of Cleveland County entered a default foreclosure judgment in favor of Wells Fargo and against Soriano in the principal amount of $396,054.78, with interest at 6.125% per annum from September 1, 2007, until paid; abstract and title expenses in the amount of $750; accrued late charges in the sum of $364.56; escrow advances in the sum of $2,509.22; and the sum of $900 in attorney's fees. [Doc.19-5]. The Journal Entry of Judgment included amongst the Court's findings that "said mortgage owned, held and sued upon by the Plaintiff" (Wells Fargo).

---

[3] The case styled, "*Wells Fargo Bank, N.A., Plaintiff v. Michael A. Soriano et al., Case No. CJ-2008-211*".  A copy of the Petition has not been filed of record in the present case; however, the Court is entitled to take judicial notice of both its own docket sheets and the state court docket sheets.  *United States v. Ahidley*, 486 F.3d 1184,1192, n. 5 (10th Cir. 2007) ("We may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand."); *Adams v. Watts,* 2009 WL 5101759 (W.D. Okla. 2009) (taking judicial notice of the public records of the District Court of Comanche County available on the Internet); *Shoulders v. Dinwiddie,* 2006 WL 2792671 (W.D. Okla. 2006) (court may take judicial notice of state court records available on the world wide web including docket sheets in district courts); *Stack v. McCotter,* 79 Fed.Appx. 383, 391 (10th Cir. 2003) (unpublished opinion) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed.R.Evid. 201).

5.   On August 25, 2008, Soriano filed for relief under Chapter 13 in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 08-13655.

6.   On December 11, 2008, Wells Fargo filed an Amended Proof of Claim alleging an arrearage of $40,612.19, which included disclosed late charges and attorney's fees. [Doc.19-6]. Soriano did not object to the 2008 Proof of Claim.  On February 24, 2009, Soriano's Chapter 13 Plan was confirmed under which ongoing monthly payments would be made at $3,100.10 per month and the stated arrearage paid to Wells Fargo was in the amount of $40,407.19. [Doc.19-7].   On February 27, 2009, Soriano's bankruptcy was dismissed.[4]

7.   On June 16, 2009, the Property was sold at sheriff's sale, and the Motion to Confirm Sale was set for hearing for July 7, 2009.  On June 25, 2009, Soriano filed his second Chapter 13 in the United States Bankruptcy Court for the Western District of Oklahoma, Case No. 09-13384.

8.   On September 14, 2009, Soriano's Chapter 13 Plan was confirmed under which Wells Fargo was to be paid a monthly ongoing payment of $2,576.31 per month. [Case 09-13384, Doc. 22]. Neither the total amount of the Wells Fargo debt nor the amount of any arrearage was indicated.

---

[4] The bankruptcy docket sheet reflects that the case was dismissed upon the ex parte application of Soriano pursuant to § 1307(b).  Soriano asserts in his Objection to Wells Fargo's Motion for Summary Judgment that the bankruptcy was voluntarily dismissed because "he understood a modification (with Wells Fargo) would occur,  making bankruptcy unnecessary." [Doc. 21, pg.2 ¶ 9].  However, in his Motion for Continuation of Automatic Stay filed in his second bankruptcy, Soriano asserted that "[t]he previous case was dismissed because the debtor was a self-employed consultant who, because of economic downturns in the general business cycle , was unable to maintain payments under the Chapter 13 plan". [Case 09-13384, Doc. 8].  Whatever the reason for the first bankruptcy's dismissal, the Court does not believe the reason is material.

9.  On September 30, 2009, Wells Fargo filed its secured Proof of Claim 17-1 [Case. 09-13384] in the total amount of $414,774.20, which included an arrearage and other charges in the amount of $64,279.23, making the new ongoing monthly payment (including the arrearage) of $3,116.75. [Doc.19-10].

10.  On October 16, 2009, Soriano filed *Debtor's Objection to Proof Of Claim No. 17 for $414,774.20 filed by Wells Fargo, N.A.* [Doc.19-11]. The basis of Soriano's Objection was that the "claim should be disallowed to the extent it would require a different payment from the judgment payment set forth in the confirmed plan" of $2,576.31 per month for sixty months. [Doc.19-11].

11.  On January 26, 2010, the Court entered an agreed Order Resolving The Debtor's Objection to Wells Fargo Bank's Proof of Claim [Doc.19-13].[5] The Order recited that by agreement of the parties (1) Wells Fargo accepted the Chapter 13 Plan as confirmed, (2) Wells Fargo was to receive $2,576.31 in monthly payments from the trustee, (3) Soriano would receive a discharge of the Wells Fargo debt only upon completion of the plan, if he complies with the confirmation order and generally is entitled to a discharge, (4) Soriano was to pay all future insurance and taxes on the real estate and provide Wells Fargo with proof thereof, and (5) Wells Fargo would retain its judgment lien on the property throughout the case, and following completion of the plan, Wells Fargo's mortgage balance would continue to be fully enforceable *in rem* following completion of the Plan and entry

---

[5] The Order also resolved other matters including the Trustee's Objection to Wells Fargo's Proof of Claim and the Trustee's Motion to Dismiss for Non-Feasibility.

of the order of discharge.

12.  On July 29, 2013, Soriano filed another Objection to Wells Fargo's 2009 Proof of Claim of $414,774.20 on the basis that Wells Fargo lacked standing because the Federal Home Loan Mortgage Corporation ("Freddie Mac") was the actual owner of the loan and that Wells Fargo was not entitled to payment. [Doc.19-14].  Wells Fargo failed to timely respond to Soriano's Objection, and on August 16, 2013, the Court entered its Order denying Wells Fargo's claim. [Case 09-13384, Doc. 79].  The Court further ordered that Wells Fargo "disgorge all funds disbursed to it by the Chapter 13 Trustee and return the same to the estate, *instanter*." [Case 09-13384, Doc. 79].

13.  On August 26, 2013, Wells Fargo filed its Combined Motion and Brief for Relief from Order seeking the Court to grant relief (vacate) from its order of August 16, 2013, disallowing Wells Fargo's Proof of Claim (the "Objection Order") [Doc.19-16].  On December 31, 2014, the Court entered an *Agreed Order Resolving Wells Fargo Bank, NA's Motion for Relief from Order.* [Doc.19-16].  The Order granted in part and denied in part Wells Fargo's Motion for Relief.  It ordered that Wells Fargo (1) **shall not** be required to disgorge all funds disbursed to it by the Chapter 13 Trustee (emphasis in Order), (2) be required to provide a full payment history to Soriano and his counsel detailing any and all payments received during the pendency of the bankruptcy and the application of the payments to Soriano's account, and (3) that Soriano may pursue a loan modification or other loss mitigation programs offered by Wells Fargo, and Wells Fargo was authorized to work directly with Soriano for loan modification or loss mitigation purposes only.  The Order found that the remaining provisions of the Objection Order to Claim #17 were to

remain in full force and effect.

14.  On May 15, 2015, Soriano received a Discharge after completing his Chapter 13 Plan. [Doc.19-17].

15.  On November 10, 2015, Soriano filed his third Chapter 13, the present case underlying this adversary. [Case 15-14341, Doc.1].   On May 12, 2016, the case was converted to one under Chapter 11. [Case 15-14341, Doc. 28].

16.  On January 25, 2016, Wells Fargo filed its Proof of Claim 2 in the present underlying case in the total amount of $536,486.37, with an arrearage of $193,859.94. [Doc.19-18].

17.  On January 8, 2017, Soriano filed a Chapter 11 Plan, which with regard to Wells Fargo, while disputing both the total amount of the claim of $536,486.37 and an arrearage of $193,859.94, provided for monthly payments extending beyond the term of the Plan in the amount of $3,357.70 through the maturity date of the original note, December 1, 2036. [Doc.19-19].   On February 8, 2017, Soriano filed a Corrected Chapter 11 Plan disputing Wells Fargo's claim but proposing to pay Wells Fargo $3,357.70 per month for twenty years, but not proposing to pay the claimed arrearage. [Doc.19-20].   The Corrected Plan indicated Soriano's intent to file an objection to Wells Fargo's Proof of Claim and the filing of an adversary proceeding to determine the extent and validity of Wells Fargo's lien.

18.  On March 2, 2017, Wells Fargo filed its Objection to the Chapter 11 Plan on the basis that the Plan failed to provide for the payment of the mortgage arrearage and for adjustments to the regular monthly payment to account for fluctuations in the amount needed to pay taxes and insurance. [Doc.19-21].

8

19.   On April 17, 2017, Soriano commenced the present Adversary Proceeding. [Doc.1].  On April 18, 2017 Soriano filed his Amended Complaint and Objection to Proof of Claim filed by Wells Fargo. [Doc.4].

### III. Discussion

### A. Summary Judgment Standard

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Fed.R.Bankr.P. 7056.   "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact".  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).   Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied.  Hearsay evidence cannot be considered on a motion for summary judgment.  *Wiley v. United States*, 20 F.3d  222, 226 (6ᵗʰ Cir. 1994).

When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See, *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10ᵗʰ Cir. 1991); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10ᵗʰ Cir. BAP 1997).  Denial

9

of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).  No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment.  See, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.").  "[T]he non-moving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

### B.  Soriano's Objection to Wells Fargo's Proof of Claim

In Count I of his Amended Complaint, Soriano asserts an objection to Wells Fargo's Proof of Claim on four grounds: (1) Wells Fargo lacks standing because it is not the owner of the Note and Mortgage; (2) it is based on a proof of claim which was objected to and denied in Soriano's prior bankruptcy; (3) it is based upon a promissory note upon which the statute of limitations has expired, and (4) it includes fees not approved in Soriano's other bankruptcies and does not accurately compute interest, principal and legal expenses.

### 1.    Wells Fargo's Standing to File its Proof of Claim.

Soriano claims Wells Fargo lacks standing because on February 12, 2007, prior to Wells Fargo filing the state foreclosure action, its interest in Soriano's Promissory Note and Mortgage were assigned/transferred to Freddie Mac.  In its Motion for Summary Judgment,

10

Wells Fargo does not dispute this.[6]  Despite the transfer of ownership to Freddie Mac,

Wells Fargo remained in possession of the Note.[7]  Possession alone suffices to give Wells

Fargo holder status sufficient to enforce the note and have standing.  Under the Oklahoma

Uniform Commercial Code (U.C.C.), a person entitled to enforce negotiable instruments

such as the Note includes "the holder of the instrument," 12A O.S § 3-301(i), and "a holder

is 'the person in possession of a negotiable instrument that is payable either to bearer or

to an identified person that is in possession.'" 12A O.S. § 1-201(b)(21).   Section 3-301

also provides that "[a] person may be a person entitled to enforce the instrument *even*

*though the person is not the owner of the instrument* or is in wrongful possession of the

instrument."[8] (Emphasis added).

---

[6] There is nothing in the record to document the actual assignment/transfer of the Note to Freddie Mac.  Neither does Soriano state how he learned that such transfer had occurred.  The records of the County Clerk of Cleveland County do not reflect any assignment of the Mortgage from Wells Fargo to Freddie Mac.  Under normal procedure, Freddie Mac buys notes and mortgages from the originating lender. Freddie Mac then enters into Servicing Agreements and Custodial Agreements with the original lender to provide for the servicing of the loan and custody of the loan documents.  The actual documents remain in the physical custody of Wells Fargo, who by the terms of the agreement and Freddie Mac Guide, has custody of the documents on behalf of Freddie Mac.

[7] That Freddie Mac is the "owner" of the Note and Mortgage does not mean that Wells Fargo actually assigned its legal interest in the Mortgage to Freddie Mac.  Mortgage servicers typically hold legal title to the mortgage on behalf of the equitable owner of the mortgage.  The Custodial Agreement and Freddie Mac Seller/Servicer Guides do not provide that an assignment to Freddie Mac actually occur prior to the filing of the State foreclosure.  Neither document requires an actual and present assignment from the servicer to Freddie Mac.  Rather, they simply require the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Freddie Mac.  See e.g. *Willhite v. Federal National Mortgage Association*, 2014 WL 510376 at*7-8 (D. Minn. 2014); *Krawza v. Federal Home Loan Mortgage Corporation*, 2014 WL 4163584 (D. Minn. 2014);

[8] The Official Code Comment to § 3-301 notes that the law was the same "[u]nder prior Oklahoma law where the holder of legal title to an instrument could maintain an action on the instrument, even though others might be beneficial owners."

11

A cause of action against the maker of a promissory note is established if the plaintiff proves that: (1) plaintiff is the holder of the note on which the plaintiff sues; (2) defendant signed the note; (3) the note became due and payable; and (4) defendant has not paid the amount due and owing. *FDIC v. Lockhaven Estates, LLC*, 918 F.Supp.2d 1209, 1233 (D. N.M. 2012) (citing, *Federal Savings and Loan Insurance Corp. v. Wilson*, 722 F.Supp.306, 309 (N.D.Tex.1989)); See also, *Green Tree Servicing, LLC v. Christodoulakis*, 136 F.Supp.3d 415, 427 (E.D. N.Y. 2015*); United States v. Petroff-Klein*, 557 F.3d 285, 290 (6th Cir. 2009); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). "Generally, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment." *Federal Savings and Loan Insurance Corp. v. Wilson*, 722 F.Supp. 306, 309 (N.D. Tex. 1989); *United States v. Wilkinson*, 170 F.Supp.2d 1156, 1157 (D. Kan. 2001) ("Ordinarily, suits on promissory notes provide 'fit grist for the summary judgment mill.'") (citations omitted).

Importantly, Soriano does not address Wells Fargo's claim that it is the "holder" of the Note; rather, he asserts that Freddie Mac's "ownership" of the Note (or Wells Fargo's lack of ownership) deprives Wells Fargo's of standing. Soriano refers to Freddie Mac as the "owner" of the Note. On the other hand, Wells Fargo makes reference to Freddie Mac as an "investor" that obtained ownership of the Note and Mortgage but left possession of the Note and Mortgage with Wells Fargo who continued to act as the servicer of the Soriano loan and the holder of the Note.[9]  In the present circumstances, the Court views

---

[9] A "holder" is defined as the person in possession of a negotiable instrument that is payable either to the bearer or to an identified person that is the person in possession. 12A O.S. § 1-201(b)(21).  A "servicer" is defined by 12 U.S.C. § 2605(i)(2) & (3) as the person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan."

12

the terms "investor" and "owner" to be indistinguishable, and neither term makes any difference as to Wells Fargo's standing to file the foreclosure or, more importantly, to file its Proof of Claim. Wells Fargo is, in fact, the holder of the Note and has standing to enforce it. Whether or not Wells Fargo owns the Note is irrelevant to it's standing to file a Proof of Claim. *In re Walker,* 466 B.R. 271 (Bankr. E.D. Pa. 2012) (recognizing a distinction between the owner of a Note and who was entitled to enforce it); *PHH Mortgage Corp. 2001 Bishop's Gate Blvd. v. Powell,* 100 A.3d 611, 621 (Pa. Super. 2014) ("Evidence that some other entity may be the 'owner' or an 'investor' in the Note is not relevant to this determination, as the entity with the right to enforce the Note may well not be the entity entitled to receive the economic benefits from payments received thereon."); *In re Merritt,* 555 B.R. 471, 477 (E.D. Pa. 2016) (The debtor's "focus on Freddie Mac's status as the 'owner' is thus irrelevant ... to whether (the Bank) is the servicer and/or the holder of the Note, which would give it standing to file the Proof of Claim."); *In re Densmore,* 445 B.R. 307 (Bankr. D. Vt. 2011); *In re Minbatiwalla,* 424 B.R. 104 (Bankr. S.D. N.Y. 2010) (servicer has standing to file proof of claims); *Greer v. O'Dell,* 305 F.3d 1297, 1302-03 (11th Cir. 2002) *(*servicer of unsecured credit card debt is party in interest that may file proof of claim for the creditor); *In re Alcide,* 450 B.R. 526, 537, n. 22 (Bankr. E.D. Pa. 2011) ("In the proof of claim context, the authority of a servicer to file a proof of claim is expressly authorized by the rules of court.") (citing Fed.R.Bankr.P. 3001(b) (authorizing a proof of claim to be filed by the creditor's 'authorized agent'")). Thus, even though Freddie Mac is the owner of the Note – a fact which Soriano mistakenly believes is dispositive – Wells

---

Wells Fargo will tender the original note for inspection in the event that the Court sets the Motion for Summary Judgment for hearing. [Doc. 24 ¶ 2].

Fargo has standing to enforce the Proof of Claim as both the holder of the Note and servicer of the loan.

> **2.    Denial of Wells Fargo's Claim in Prior Bankruptcy as a Bar to Its Present Proof of Claim**

Soriano next asserts that the doctrine of *res judicata* compels the denial of Wells Fargo's Proof of Claim in this third bankruptcy on the basis that Wells Fargo's Proof of Claim in his second bankruptcy was denied.  The factual road to the denial of Wells Fargo's claim in the prior case is sufficiently nuanced and convoluted (see Material Facts ¶'s 10,11,12, and 13 above), and despite its length it is necessary in some detail to restate here.

Soriano filed two Objections to Wells Fargo's Proof of Claim in the second bankruptcy.  The first only sought that Wells Fargo's claim be disallowed to the extent that it did not conform to the confirmation order which proposed to pay Wells Fargo $2,576.31 per month.  The Objection recognized that there would remain a balance due Wells Fargo after completion of the plan and the debtor's discharge "in which Debtor will continue to pay."  That Objection was resolved by an Agreed Order which provided, among other things, that following completion of the Plan, "Wells Fargo's mortgage balance shall continue to be fully enforceable *in rem* following completion of the Plan and entry of the order of discharge." [Doc.19-13].  The confirmed Chapter 13 Plan provided for payments to Wells Fargo which were made for nearly 4 years.  Soriano then filed another objection on the basis that Freddie Mac had acquired the Soriano loan and Wells Fargo "is thus not entitled to payment" and seeking that Wells Fargo's "claim should be fully disallowed and WFB be ordered to return all sums paid to the Debtor's estate". [Doc.19-14].  When Wells

14

Fargo failed to timely respond to the Objection, the court entered its Order Modifying Chapter 13 Plan and Awarding Compensation. [Doc.19-15]. The Order in ¶ 3 found that "[t]he secured claim of Wells Fargo Bank NA has been disallowed and it shall receive no further disbursements under the Plan." Significantly, it did not determine the state court foreclosure judgment in favor Wells Fargo be determined unenforceable or that the Wells Fargo mortgage lien be avoided. It merely provided that Wells Fargo would receive no further disbursements *under the Plan*.

Wells Fargo then filed a Motion for Relief from Order under Fed.R.Civ.P. 60(b)(1). [Case. 09-13384, Doc. 82]. The parties reached an Agreed Order Resolving Wells Fargo's Motion for Relief from Order [Doc.19-16] which indicated some ambivalency as to whether Wells Fargo's claim was being denied in full. The Agreed Order provided that Wells Fargo was entitled to keep all funds that had been disbursed to it by the Chapter 13 Trustee and it would not be required to return any funds to the bankruptcy estate. The Agreed Order further provided that Soriano could pursue a loan modification or loss mitigation alternative programs offered by Wells Fargo consistent with any investor guidelines or criteria. These terms appear to be inconsistent with any complete denial of Wells Fargo's claim. The Agreed Order further provided that the "remaining provisions of the Order Sustaining the Objection to Claim #17 shall remain in full force and effect."

Further giving contradictory signals as to whether Soriano was seeking to completely deny any claim of Wells Fargo was the fact that when Soriano filed the present case his new Chapter 13 Plan provided for the payment of Wells Fargo's claim of $414,774.20, with a monthly payment of $3,200, at the contract rate of interest, the secured debt extending beyond the length of the Plan and that the "home mortgage loan owed to servicer Wells

15

Fargo Bank will be modified under HAMP or similar loan modification package, to cure the existing arrearage through re-amortization of the loan . . .." [Case 15-14341, Doc. 2]. Soriano then filed a Second Amended Plan proposing to pay Wells Fargo $339,774.20 in monthly payments of $3,325.45, with an arrearage of $75,000 to be cured. [Case 15-14341, Doc.15]. Both the amount of the claim and the arrearage was shown as "disputed".

Wells Fargo then filed an Objection to the Second Amended Plan primarily on the basis that the actual arrearage on the mortgage was $193,859.94 while the Plan placed the arrearage at $75,000. [Case 15-14341, Doc. 20].   A hearing on the confirmation of the Chapter 13 Plan was continued several times and finally set on April 26, 2016.  The day before the hearing, April 25, 2016, Soriano filed his Motion to Convert the case to one under Chapter 11 so that "he may reorganize, and cure disputed arrearages on his home mortgage." [Case 15-14341, Doc. 24]. Without objection, the case was converted to Chapter 11. [Case 15-14341, Doc. 28].  After Wells Fargo moved to lift the automatic stay and Soriano objected, the parties entered into an Agreed Order Mooting Request for Relief from the Automatic Stay and Abandonment of Property and Granting Adequate Protection Payments by which Soriano agreed to make monthly adequate protection payments to Wells Fargo of $3,357.70 [Case 15-14341, Doc. 68].  Soriano then filed his Amended Chapter 11 Plan which provided for Wells Fargo's total claim of $536,486.37, including an arrearage of $193,859.94, which were both listed as disputed, and that Soriano intended to file an adversary proceeding to determine the extent and validity of Wells Fargo's lien. The adequate protection payments of $3,357.70 would, however, continue until the maturity date of the original note, December 1, 2036. [Case 15-14341, Doc. 79].  Wells Fargo objected to the Amended Plan primarily on the basis that Soriano had listed the

arrearage as disputed and that the plan "does not provide any payment on the arrearage (and) [i]t is unclear how the Debtor is proposing to cure said arrearage." [Case 15-14341, Doc. 87]. The current adversary proceeding was filed shortly thereafter.

What all of Soriano's above machinations demonstrate to the Court is that despite his present position that he owes Wells Fargo nothing because of the denial of its claim, he continued to propose and/or make payments to Wells Fargo in all three of his bankruptcies, including the continued adequate protection payments in the converted Chapter 11, and continued attempts at loan modification.  The Agreed Order Resolving Wells Fargo's Motion for Relief from Order modified the Order Denying Wells Fargo's claim in language inconsistent with the total extinguishment of the claim. [Doc.19-16].  It appears to the Court that Soriano was recognizing a continued obligation to make his mortgage payments, but he was financially unable or unwilling to make both the current monthly payment as well as the mushrooming arrearage.  The Court agrees with Wells Fargo which states in its Motion for Summary Judgment that the adversary "primarily involves a dispute over the arrearage" which Soriano owes on his mortgage loan.

A debtor asserting *res judicata* "has the burden of proof on all elements and bears the risk of non-persuasion."  *In re Brawders*, 503 F.3d 856, 867 (9th Cir. 2007).  Whether it be a plan or an order, the same should clearly state its intended effect on a given issue. Where it fails to do so it may have no *res judicata* effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make a final determination on the matter at issue, and claim preclusion generally does not apply to a "claim" that was not within the partys' expectations of what was being litigated, nor plainly inconsistent with the fair and equitable

17

implementation of a statutory or constitutional scheme. *Id.*  The Court finds too much uncertainty and ambiguity in the orders regarding Soriano's objections to Wells Fargo's proofs of claim to find that as a matter of law that *res judicata* compels the extinguishment of all of Wells Fargo's rights under its Note and Mortgage.

Even if the Court regards the denial of the Wells Fargo Proof of Claim in the second bankruptcy case as *res judicata* that doesn't release Soriano of somehow having to deal with his obligations, including the arrearage, under the Note and Mortgage at the risk of losing his house at sheriff's sale.  In *In re Thompson,* 570 B.R. 336 (Bankr. E.D. Okla. 2017), Judge Cornish was presented with the issue as to whether a Chapter 13 mortgagee which had failed to timely file a proof of claim lost its mortgage rights.  In language applicable to the present case, the Court stated as follows:

> Chapter 13 provides debtors a way to retain their property while paying their debts over a fixed period of time.  Plan terms as outlined in §1322 contemplate that debtors who want to keep their homes will make some attempt to cure default and make regular monthly payments if they intend to exit bankruptcy caught up and current on those mortgages and not facing foreclosure.  Here, however, Debtor wants to gain the protections afforded him by bankruptcy such as the automatic stay, without servicing his debt.  By failing to timely file a proof of proof of claim, Chase has waived its right to receive payment under Debtor's plan.  However, this does not result in the waiver of its rights to receive payment on the debt.  In accordance with the terms of the mortgage, Debtor is required to service the debt in some way.  If he fails to do this, he will exit bankruptcy in default to Chase and Chase will no doubt attempt to enforce its rights to the property in accordance with the note and mortgage under state law.

*Thompson*, at 344.  See also, *In re Colley*, 570 B.R. 346, 351 (Bankr. E.D. Okla. 2017) ("Even though Chase's claim is disallowed for untimeliness, the Court does not believe it

can wipe out the entire arrearage claim and declare the mortgage current when Debtor has made no attempt to cure the default. Instead, it appears that what Debtor is attempting to do is gain a huge windfall."); *In re Matteson,* 535 B.R.156, 164 (6th Cir. BAP 2015) (the mortgagee failed to file a proof of claim, but "mortgagee's election not to participate in the Chapter 13 plan, however, did not result in the mortgagee's waiver of its right to payment on the debt. To avoid default on the mortgage loans, the Debtors were still required to service the debt, if not through the plan, then by making payments outside the plan.").

The result of the disallowance of Wells Fargo's claim in the second bankruptcy, in the absence of an adversary proceeding under Fed.R.Bankr.P. 7001(2) (which wasn't done), still would not change the fact its mortgage lien would pass through bankruptcy unaffected; regardless whether it ignored the bankruptcy case, or filed an unsecured claim and meant to file a secured claim, or filed an untimely claim after the bar date has passed. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773 (1992) (a lien on real property passes through bankruptcy unaffected); *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"); *In re Picht*, 428 B.R. 885, 891-92 (10th Cir. BAP 2010) ("The United States Supreme Court has repeatedly held that liens pass through Chapter 7 bankruptcy unaffected, and the debt secured by the lien continues to exist and is enforceable against property securing the debt (unless, of course, the lien is avoided)."). Thus, even if the denial of the claim in the second case was *res judicata* in the present Chapter 11 bankruptcy Wells Fargo's *in rem* lien rights remain unaffected.

### 3.    Whether Wells Fargo's State Court Claim is Time Barred from Enforcement

The third ground to which Soriano asserts that Wells Fargo's Proof of Claim should be denied is "because it is based upon a promissory note for which the statute of limitations bars collection." [Doc.4, ¶ 43].  Wells Fargo has moved for summary judgment on the statute of limitations issue on the basis that the state court foreclosure proceeding was filed within the applicable statute of limitations.  Wells Fargo is correct.  The Oklahoma statute of limitations to collect upon a promissory note is six years from the date of acceleration. 12A O.S. § 3-118(a).  The date of acceleration was January 14, 2008. [Doc.19-4].[10]  Wells Fargo filed its foreclosure action on February 1, 2008, well within the six year statute of limitations.

While Soriano in his Amended Complaint only asserts expiration of the statute of limitations, in his Objection to the Motion for Summary Judgment, he doesn't address the statute of limitations issue; rather, he asserts that the foreclosure judgment was "not renewed" and "the efficacy of the judgment has departed upon dormancy." [Doc. 21, pgs.4 & 10].  "Dormancy" and whether a claim is barred by the statute of limitations are two different issues. Presumably, though not stated in his pleadings, Soriano is relying upon the Oklahoma dormancy statute, 12 O.S. § 735, which provides that unless an execution, notice of statute renewal of judgment or garnishment is issued within five years from the

---

[10] Wells Fargo asserts that the date of  acceleration was January 14, 2008, based upon the Debt Verification Notice which its counsel sent to Soriano on that date.   A prior demand letter from Wells Fargo to Soriano dated November 12, 2007, indicated that unless payments were made on the note and mortgage they would be accelerated as of December 12, 2007. [Doc.19-3]. Whichever date is used, January 14, 2008 or December 12, 2007, the foreclosure action was filed within the six year statute of limitations.

20

date of the judgment or five years since the last execution or renewal of judgment was filed, the judgment is unenforceable and of no effect.  Like his statute of limitations argument, Soriano's dormancy argument would be unavailing insofar as it affects Wells Fargo's *in rem* rights under its mortgage.

Bankruptcy Code § 108(c) applies to the renewal of state court judgments.  The time for renewing a state court judgment does not expire until the *later* of the applicable state law or thirty days after the termination of the automatic stay.   Unlike some states, Oklahoma law provides that the automatic stay does not prevent a judgment creditor from filing a notice of renewal of judgment and extending its judgment lien.  *3M Dozer Service, Inc. v. Baker*, 2006 OK 28, 136 P.3d 1047.  However, even though Wells Fargo could have renewed its judgment lien at any time within five years of rendering without violating the automatic stay, Oklahoma law provides that § 108(c) extends the time in which the judgment creditor could execute on the judgment and the judgment lien for at least thirty days after the automatic stay was lifted. *Id*. at 1053.  The state court judgment was entered on July 9, 2008.  Absent the bankruptcy, the five-year period within which to renew the judgment would have expired on July 8, 2013.  On that date, Soriano was still in his second Chapter 13 with the automatic stay still in effect.  The automatic stay did not terminate until the granting of Soriano's discharge on May 15, 2015.  Wells Fargo thereafter had thirty days, or until June 15, 2015, to renew its judgment.  It didn't.  Its "judgment lien" may have expired, but it was the holder of not solely a judgment lien but for the foreclosure of a consensual mortgage lien which would continue until the property was sold and the sale confirmed.

21

Oklahoma law provides that a decree of foreclosure determines only that there is a valid mortgage lien which the mortgagee is entitled to enforce to a sale. Until there has been a sale of the foreclosed property, the mortgagor retains the right of redemption until the mortgage has been dissolved by sale of the property. As stated in *Bank of the Panhandle v. Hill,* 965 P.2d 413, 416 (Okla. Civ. App. 1998):

> A mortgage lien on real estate is not merged into a decree of foreclosure, nor is it extinguished by the mere rendition of decree of foreclosure. It is extinguished only by a sale.*** '[U]ntil the sale the mortgage as a property right created by contract remains. . . unaffected.' (Citing *Anderson v. Barr*, 178 Okla. 508, 62 P.2d 1242 (1936)).

See also, *In re Sun 'N Fund Waterpark, LLC*, 408 B.R. 361, 371 (10th Cir. BAP 2009) ("Because the bank's collateral had not yet been sold at sheriff's sale, there has been no merger."). Furthermore, the entry of a deficiency judgment has been held to constitute a new judgment for purposes of the dormancy statute. *Panhandle*, 965 P.2d at 416; *Baker v. Martin*, 1975 OK 112, 538 P.2d 1048. In the present case, Soriano's property has yet to be sold, and there is yet the possibility of a deficiency judgment if Wells Fargo should choose to seek the same. Thus, there can be no successful argument that the mortgage lien cannot be enforced due to dormancy. The "bottom line" is that Soriano has to pay the mortgage or lose his home.

### 4.    The Rooker-Feldman Doctrine as a Bar to Soriano's Challenge as to Wells Fargo's Standing

Wells Fargo asserts that Soriano's challenge to its standing is precluded by the application of the Rooker-Feldman doctrine. The Rooker-Feldman doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment from

22

bringing a case seeking review and rejection of that judgment in federal court. See, e.g. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 291-92, 125 S.Ct. 1517 (2005); *In re Miller*, 666 F.3d 1255 (10th Cir. 2012). The Rooker-Feldman doctrine has been applied to bar collateral attacks on judgments entered in State foreclosure proceedings. *Kline v. Deutsche Bank National Trust Co. (In re Kline)*, 472 B.R. 98, 105 (10th Cir. BAP 2012 ). In short, federal courts lack subject-matter jurisdiction to review final state court judgments. *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006). The Rooker-Feldman doctrine is not limited to the preclusion of claims actually litigated and decided on the merits by the state court, it also precludes claims which are inextricably intertwined with the State Court judgment. *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006).

In the foreclosure context, the Tenth Circuit has held that proceedings are final for purposes of Rooker-Feldman when granting the requested relief would completely undo the foreclosure and eviction proceedings. *Dillard v. The Bank of New York,* 476 Fed.Appx. 690, 692, n. 3 (10th Cir. 2012). There is no doubt in the present case that Soriano has made a direct attack upon the judgment, asserting that "the Judgment is not enforceable under state law", and that Wells Fargo "does not have a viable interest in the Judgment." [Doc. 4 ¶ 47]. See e.g., *In re Washington*, 469 B.R. 587 (Bankr. W.D. Pa. 2012) (Rooker-Feldman doctrine prevents the debtor from challenging the standing of mortgagee to file a proof of claim when the state court had already entered a foreclosure judgment in favor of that mortgagee); *In re Stewart*, 473 B.R. 612, 630-31 (Bankr. W.D. Pa. 2012) (it would be impossible for bankruptcy court to hold that mortgagee did not have a claim secured by the debtor's property without reviewing or rejecting a state foreclosure judgment); *Sheikani*

23

*v. Wells Fargo Bank,* 577 Fed.Appx. 610 (7th Cir. 2014) (Rooker-Feldman doctrine prevented appellant from pursuing an argument that foreclosing entity was not the true owner of the loan because the district court lacked jurisdiction to consider such argument); *In re Agard,* 444 B.R. 231, 243-44 (Bankr. E.D. N.Y. 2011) (Rooker-Feldman doctrine prevented standing challenge when net effect of upholding such challenge would be to deny mortgagee bank rights granted to it by state court judgment).

The state court judgment against Soriano was taken by default.  Soriano contends that "no preclusive effect will obtain from such a default judgment".  Soriano conflates the requirements of the Rooker-Feldman doctrine with the requirements of issue preclusion (collateral estoppel).  See *Exxon Mobil,* 544 U.S. at 293, 125 S.Ct. 1517 *(*Rooker-Feldman is distinct from principles of preclusion, and a court is not barred from exercising jurisdiction under Rooker-Feldman even if a plaintiff attempts to litigate in federal court a matter previously litigated in state court).  Rooker-Feldman can be applicable to a judgment that was entered by default.  See e.g*., Fischer v. Bank of America, NA (In re Fischer)*, 483 B.R. 877, 883 (Bankr. E.D. Wis. 2012); *Stewart v. J.P. Morgan Chase Bank, NA (In re Stewart)*, 473 B.R. 612, 630 (Bankr. W.D. Pa. 2012) ("The jurisdictional limitations imposed by Rooker-Feldman apply. . . also to default judgments."); *Randall v. Bank One National Association (In re Randall),* 358 B.R. 145, 159 (Bankr. E.D. Pa. 2006) ("[A] default judgment in mortgage foreclosure, prior to any sale, was sufficient to trigger application of Rooker-Feldman.")).

On the other hand, issue preclusion requires four separate elements: (1) the issue previously decided is identical with the one presented in question, (2) the prior action has

been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Stan Lee Media, Inc. v. The Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014); *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009).  The element that the issue be "adjudicated on the merits" requires that the issue to have been "actually litigated".  *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304 (2000); *In re Corey,* 583 F.3d 1249, 1251 (10th Cir. 2009).  Accordingly, the default judgment does not permit the application of issue preclusion.[11]  The default, however, does not prevent the application of Rooker-Feldman.

## C. Soriano's Claim for Violation of the Automatic Stay

Count III of Soriano's Amended Complaint asserts that Wells Fargo "violated the automatic stay on multiple occasions by assessing late fees and adding in foreclosure costs not approved by the bankruptcy court." [Doc. 4 ¶ 51].  More specifically, as best the Court can discern, Soriano complains that Wells Fargo failed to give him credit for escrow payments totaling about $12,000 for the period of March to August 2009 (between Soriano's first and second bankruptcy), foreclosure costs of $1,537.55 following the dismissal of Soriano's first bankruptcy in 2009, and foreclosure costs of $1,112.28 following the second bankruptcy which was dismissed after completion of his Plan in 2015.

---

[11] In his Objection Soriano cites the case of *McCart v. Jordana (In re Jordana)*, 221 B.R. 950 (Bankr. W.D. Okla. 1998) in support of his argument that no preclusive effect is to be given to a default judgment.  *Jordana* involved whether a state court default judgment which found the defendant/debtor liable for fraudulent activity was binding for a finding of fraud necessary to render the debt nondischargeable pursuant to Bankruptcy Code § 523(a)(2).  Interestingly, Judge Bohanon found that issue preclusion did apply because, even though the judgment was by default, the default had been entered as a sanction for the defendant/debtor's obstructive behavior.

[Doc 21, pgs. 9-10].

The Court is unable to determine from the record whether the post-petition bookkeeping entries by Wells Fargo implicate a violation of the automatic stay imposed by § 362(a)(3) since it is not clear as to whether the challenged unilateral imposition of amounts due were or were not communicated to Soriano, the other creditors, the bankruptcy court, or any third party.  Since the automatic stay is designed to afford debtors "breathing room" free from creditor "harassment", uncommunicated internal record-keeping is not the sort of act that Congress sought to prescribe under § 362.  See, e.g. *In re Sims*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (noting that a "creditor could produce all kinds of paperwork which if communicated to the debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred"); *In re Sullivan*, 367 B.R. 54 (Bankr. N.D. N.Y. 2007) (not a violation where the mortgagee never communicated the attorney-fee charged to anyone, and debtors would not have learned of these charges but for subsequent discovery proceedings) (citing *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1 (1st Cir. 2003) (not a violation where mortgagee never communicated the attorney-fee charged to anyone)).

Soriano asserts that he learned that late fees, costs and attorney's fees in Wells Fargo's proof of claim filed in his first bankruptcy were pre-petition charges, "only upon much later receiving a RESPA response that Soriano realized such charges were post-petition."  [Soriano Affidavit, Doc. 21-1 ¶ 7].  He doesn't say when "much later" was.  Likewise, he claims the Proof of Claim in his Second Bankruptcy in 2009 was inaccurate because the total debt included post-petition amounts in violation of the automatic stay.

26

[Soriano Affidavit,  Doc. 21-1 ¶ 7].  When did he learn of this?  He certainly never claimed that it constituted a stay violation until nearly a decade later.  The Court finds, at least on the record thus far presented, that an issue of fact exists as to if and when Wells Fargo communicated to Soriano charges which he claims violated the automatic stay.

In its Motion and its Reply, Wells Fargo points out that while Soriano has not clearly specified all charges he claims were improper, it is highly probable that there is a satisfactory explanation as to why they were not improper (e.g. escrow payments explained in Reply, Doc. 24 , pg. 2-3) or they were reversed before any resulting damage to Soriano. The problem for the Court, however, is the lack of *admissible* evidence refuting Soriano's claims of improper charges.  It may well be that Wells Fargo's explanations in its Reply do, in fact, refute Soriano's claims, but that refutation is not supported by affidavit.  Wells Fargo's Motion for Summary Judgment is supported by a brief with numerous attached exhibits as well as reference to numerous documents attached as exhibits to Soriano's Objection to the Motion.  Many of those exhibits are self-authenticating or matters of which the Court may take judicial notice under the Federal Rules of Evidence (e.g. filed court documents or matters of public record).  However, references to the business records of Wells Fargo are not identified or authenticated. "In order for documents not yet part of the court record to be considered by a court in support of or in opposition to a summary judgment motion they must meet a two-prong test: (1) the document must be attached to and authenticated by an affidavit which conforms to Rule 56(e); and (2) the affiant must be a competent witness through whom the document can be received into evidence . . .. Documentary evidence for which a proper foundation has not been laid cannot support a summary judgment motion, even if the documents in question are highly probative of a

27

central and essential issue in the case." *In re Harris,* 209 B.R. 990, 996 (10th Cir. BAP 1997) ("It is well settled that unauthenticated documents cannot be considered on a motion for summary judgment. In order to be considered by the court, 'documents must be authenticated by and attached to an affidavit that meets the requirements of [Fed.R.Civ. P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.' This Court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment.").*; IBP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258, 1263 (D. Kan. 1998); *Farmers Alliance Mut. Ins. Co. v. Naylor,* 452 F.Supp.2d 1167, 1176-77 (D. N.M. 2006). Thus, at this point there is not a sufficient evidentiary basis upon which to render summary judgment on Soriano's claim of a violation of the automatic stay due to Wells Fargo allegedly charging and attempting to collect unauthorized fees.

The Court has concluded that at this juncture summary judgment should not be granted on the stay violation claims. Wells Fargo also asserts that even if such violations occurred they are barred by the equitable doctrine of laches. In neither his first (filed in August 2008), second (filed in June 2009) nor the present bankruptcy (filed in November 2015) did Soriano either within his objections to Wells Fargo's proofs of claim or independently assert a violation of the automatic stay. It was not until the filing of this adversary in April 2017, that a stay violation was asserted. Wells Fargo argues that any improper charges were long since reversed before the present adversary was filed. Under these circumstances does the passage of time bar Soriano's claims of a stay violation?

The Bankruptcy Code does not contain a statute of limitations within which actions

28

for damages for violation of the automatic stay under 11 U.S.C. § 362(k) must be filed. *In re Stanwyck*, 450 B.R. 181, 193 (Bankr. C.D. Cal. 2011); *In re Terrace Housing Associates, Ltd.*, 577 B.R. 459, 462 (Bankr. E.D. Pa. 2017). The equitable doctrine of laches, however, may be applicable to determine if Soriano's § 362(k) demand is time-barred, and Wells Fargo asserts the doctrine here. *Adams v. Hartconn Associates, Inc. (In re Adams)*, 212 B.R. 703, 711-12 (Bankr. D. Mass. 1997) (debtor is time-barred from pursuing a claim for damages for violation of the automatic stay because the debtor waited nineteen months to file a motion to reopen); *Nelson v. Post Falls Mazda (In re Nelson)*, 159 B.R. 924, 925, (Bankr. D. Idaho 1993) (laches is an appropriate defense to an action seeking damages for violation of the automatic stay, particularly when the action is commenced after the bankruptcy case has been dismissed).

"In order to prove the affirmative defense of laches, the defendant must demonstrate that there has been an unreasonable delay in asserting a claim and that the defendant was materially prejudiced by that delay." *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997); *D. Kirk, LLC v. Cimarex Energy Co.,* 604 Fed.Appx. 718, 727 (10th Cir. 2015). It is not necessary that the party asserting laches must show "irreparable harm" but, rather, "that the defendant was prejudiced by the delay." *Id*. at 727. As the party invoking laches, Wells Fargo bears the burden of establishing the elements that (1) Soriano unreasonably delayed in bringing an action against Wells Fargo for violation of the automatic stay, and (2) Wells Fargo was materially prejudiced by that delay. *Id*.; *Hedges v. Hedges*, 66 P.3d 364, 369 (Okla. 2002).

Consistent with the standards for determining whether Wells Fargo is entitled to

summary judgment, the Court must view all facts and reasonable inferences on the issue of laches in the light most favorable to Soriano. *Hutchinson*, 105 F.3d at 564.  The only "facts" that Wells Fargo argues to show prejudice to it by the delay in Soriano asserting a stay violation is that his "claims of violations of the automatic stay come nearly a decade too late and are advanced solely to frustrate Wells Fargo's attempt to enforce its valid lien, which survive both prior Bankruptcy proceedings." [Doc. 19, pg. 14].  In his Response to the Motion for Summary Judgment, Soriano does not even address Wells Fargo's assertion of laches.  Notwithstanding Soriano's apparent failure to challenge the laches issue, the Court must independently determine whether it can say that laches bars the stay violation claims as a matter of law. It cannot.

There is no doubt that Soriano did not make a stay violation claim for, in some instances, seven or eight years after Wells Fargo's alleged misconduct, and certainly did not make the claim in his first two bankruptcies.  While at first blush that delay seems "unreasonable" or "inexcusable", there is nothing in the record indicating when Soriano first learned of such violations (when Wells Fargo first communicated to him charges due from him which would turn out to be reversed by Wells Fargo).  See, *Hornady Mfg. Co. v. Doubletap Ammunition*, *Inc.*, 835 F.Supp.2d 1150, 1153 (D. Utah 2011)(When determining whether plaintiff's claim is unreasonably delayed, the Court looks to the time when plaintiff gained "such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.").  Perhaps more importantly, the record does not indicate how Soriano's failure to assert the violation of stay claims unduly prejudiced Wells Fargo.  There is little doubt, that Soriano's filing of multiple bankruptcies and objections to claims delayed and

30

frustrated Wells Fargo's efforts to foreclose its mortgage; however, for summary judgment purposes the Court does not see how Soriano's first seeking a violation of the automatic stay by this adversary in 2017 has delayed the foreclosure proceedings.  Those state court proceedings have been delayed by Soriano's filing of three bankruptcies beginning on August 25, 2008, without any assertion of a stay violation until nearly 9 years later, in April 2017.  While it does appear to the Court that Soriano, as argued by Wells Fargo,  may be attempting to use the stay violation as a "trump card" or another "arrow in his quiver" for further delay and to stave off foreclosure, laches precluding assertion of a stay violation has not been established.  At least at this stage of the litigation, and based on the record before it, the Court finds there exists a triable issue of fact as to "unreasonable delay" and "substantial prejudice" required for the establishment of Wells Fargo's affirmative defense of laches.

### D. Soriano's Claims Under HAMP, RESPA and FDCPA

Wells Fargo has also moved for summary judgment on Soriano's assertions that Wells Fargo committed violations of the Federal Housing Finance Agency Making Home Affordable Program ("HAMP"), the Fair Debt Collections Practices Act ("FDCPA") and the Real Estate Settlement Procedures Act ("RESPA").  As Wells Fargo points out, Soriano alleges in his Amended Complaint that these violations occurred, but he does not include them in any separate Count nor does he seek separate relief for these alleged violations. Lest there be any misunderstanding that Soriano is seeking relief under any of these acronym statutes, the Court can summarily dispose of any attempt to assert a cause of action based upon them.  Recognizing the overwhelming weight of authority, this Court has previously held that, "It is well settled that HAMP does not create a private right of action."

31

*In re Gill,* 15-14143-JDL, 2016 WL 3920608 * 4 (Bankr. W.D. Okla. 2016).  Any potential

claim under HAMP would fail as a matter of law.  Likewise, any potential claim by Soriano

that Wells Fargo may have violated the FDCPA because in 2008 its foreclosure counsel

did not disclose it was a "debt collector" is barred by the one-year statute of limitations. 15

U.S.C. § 1692k(d).  Furthermore, Wells Fargo as a servicer of mortgage debt is not a "debt

collector" subject to the FDCPA.  *Obduskey v. Wells Fargo*, 879 F.3d 1216 (10th Cir. 2018);

*Ladouceur v. Wells Fargo*, 682 Fed.Appx. 649 (10th Cir. 2017).  Nor can a claim be stated

that Wells Fargo violated RESPA by not properly responding to a "Qualified Written

Request(s)" in 2008 and 2009, as any such claim would barred by the three-year statute

of limitations applicable to RESPA. 12 U.S.C. § 2614.[12]

### IV. Conclusion

Based upon the findings of fact and conclusions of law stated above,

**IT IS ORDERED:**

**1.**   Defendant's Motion for Summary Judgment is **GRANTED** as to Count I of

Soriano's Amended Complaint objecting to Wells Fargo's Proof of Claim #2 insofar as such

Objection is based on claims that:

(a) Wells Fargo's lack of standing to file its Proof of Claim #2 [Amended

Complaint, Doc. 4 ¶ 41];

(b)  Proof of Claim #2 in the present bankruptcy is barred by virtue of a Proof

---

[12] In its Motion for Summary Judgment Wells Fargo argues that Soriano's RESPA claim is subject to a one-year statute of limitations. RESPA claims are subject to either a one-year or three-year statute of limitations. Soriano's claims appear to be premised upon Wells Fargo's failure to adequately respond to a "Qualified Written Request". Such claims under 12 U.S.C. § 2605 have a three year statute of limitations pursuant to 12 U.S.C. § 2614.

of Claim being disallowed in Plaintiff's previous bankruptcy [Amended

Complaint, Doc. 4 ¶ 42];

(c) Recovery upon the Promissory Note underlying Proof of Claim #2 is

barred by the statute of limitations [Amended Complaint, Doc. 4 ¶ 43].

**2.** Defendant's Motion for Summary Judgment as to Count I of the Amended

Complaint is **DENIED** insofar as Plaintiff is asserting an Objection to Wells Fargo's Proof

of Claim #2 on the basis that such Proof of Claim includes inaccurate escrow shortages,

inaccurate amounts of interest, inaccurate principal balance and inaccurate legal costs and

fees [Amended Complaint, Doc. 4 ¶ 44].

**3.** Defendant's Motion for Summary Judgment is **GRANTED** as to Count II of

Plaintiff's Amended Complaint as to Plaintiff's claim that:

(a) Wells Fargo has no standing to enforce the claim [Amended Complaint,

Doc. 4 ¶ 46];

(b) The State Court foreclosure judgment is not enforceable under state law

and Wells Fargo does not have a viable interest in the judgment [Amended

Complaint, Doc. 4 ¶ 47];

(c) Wells Fargo has no interest in the Property, the Mortgage or the

Judgment [Doc. 4 ¶ 49].

**4.** Defendant's Motion for Summary Judgment is **DENIED** as to Count III of the

Amended Complaint [Amended Complaint, Doc. 4 ¶ ¶ 51-55].

**5.** Defendant's Motion for Summary Judgment is **GRANTED** as to any claim

contained in the Amended Complaint that seeks to state a claim for relief against Wells

Fargo for allegations of violations of the Home Affordable Modification Program, the Real Estate Settlement Procedures Act and/or the Fair Debt Collections Practices Act [Amended Complaint, Doc. 4 ¶ ¶ 13,14, 23, 30].

# # #